UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FIRST INSURANCE FUNDING,
A DIVISION OF LAKE FOREST BANK
& TRUST CO., N.A.,

    Plaintiffs,

v.   Case No. 8:22-CV-01975-WFJ-AAS

ROYAL PREMIUM BUDGET, INC.
D/B/A STONEMARK A CORPORATION,
AND JERRY SMITH, AN INDIVIDUAL,

    Defendants.

_____

**DEFENDANT/COUNTER-PLAINTIFF STONEMARK'S
RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT FIRST
INSURANCE FUNDING'S MOTION TO DISMISS
<u>STONEMARK'S COUNTERCLAIM</u>**

Defendant/Counter-Plaintiff Royal Premium Budget, Inc., d/b/a Stonemark ("Stonemark") by and through the undersigned counsel, hereby responds in opposition to Plaintiff/Counter-Defendant First Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A.'s ("FIF") Motion to Dismiss Stonemark's Counterclaim. *See* Stonemark's Counterclaim, ECF No. 43; FIF's Motion to Dismiss (the "Motion"), ECF No. 52.[1]

---

[1] Following the filing of its Motion for Extension of Time (ECF No. 58), Stonemark and its counsel had another opportunity to confer with respect to this Response; accordingly, Stonemark acknowledges that its Motion for Extension of Time (ECF No. 58) would appropriately be denied as moot.

## INTRODUCTION

FIF, a large, bank-owned lender, sued its former employee, Jerry Smith, and his new employer, Stonemark, a small, independent lender, because Smith had the temerity to leave FIF for a better job at Stonemark. Nor was FIF content to file a meritless lawsuit. FIF's Senior Vice President and Sales Manager, David Abernathy, told Stonemark's clients, via e-mail and verbally, that Stonemark does not have sufficient capital reserves to service the needs of the clients' policyholders. This statement is designed to destroy Stonemark's reputation in the premium-insurance-funding industry. The statement also is false. Accordingly, Stonemark filed a counterclaim for trade disparagement.

FIF filed a motion to dismiss Stonemark's counterclaim, but FIF's arguments are unavailing, as FIF's own cases demonstrate. FIF does not categorically deny the falsity of its statements. Stonemark alleged a sufficiently narrow group of persons to whom the false statement was made. And a claim, like Stonemark's, for trade disparagement sounds in defamation *per se*, which does not require pleading of special damages under Florida law.

Stonemark's Counterclaim arises from false statements that disparage Stonemark's reputation and were made by employees of FIF in the scope of their employment by FIF. As alleged in the Counterclaim, Stonemark is in the business of providing insurance premium financing to insurance policyholders. Counterclaim at ¶ 3. A critical aspect of financing is the funder's (in this case,

Stonemark's) ability to cover the policyholders' premiums. *Id.* at ¶ 5. It is this specific aspect of Stonemark's trade that FIF's Senior Vice President David Abernathy disparaged.

FIF's Motion to Dismiss raises three arguments—none of which withstand scrutiny. Specifically, FIF argues that the Counterclaim: "(i) fails to plausibly allege that [FIF] or its employee made a false statement; (ii) fails to allege or identify to whom the statement was made; and (iii) fails to specifically plead special damages, including that Stonemark lost any customers or had a reduction in business as a result of such statements . . . ." Mot. at 2. As to the first argument, FIF does not categorically deny the falsity of its statements. Rather, FIF avers that its statements "could" be true. But they "could" also *not* be true, requiring denial of the Motion for the reasons set forth below. As to the second argument, once the Court cuts through FIF's characterizations of case law and instead sees the case law itself, it is clear that Stonemark did adequately allege a sufficiently narrow group of persons to whom the false statement was made. FIF's third argument simply misses the breadth of authorities (some actually cited in its own Motion) establishing that a claim for trade disparagement sounds in defamation *per se*, which does not require pleading of special damages under Florida law.

FIF's arguments, such as they are, rely on misreading holdings, selectively omitting applicable language, and reaching back over one hundred

years to English case law predating the adoption of the Federal Rules of Civil Procedure. Like the rest of its behavior with respect to Smith and Stonemark, FIF's motion to dismiss is corporate vendetta poorly masquerading as argument. The Court should deny FIF's motion so the parties can proceed expeditiously to adjudication on the merits.

## STANDARD

When presented with a Rule 12(b)(6) motion, a district court must construe the complaint broadly, *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint must be viewed in the light most favorable to the plaintiff. *Hawthorne v. MacAdjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). "Fed.R.Civ.P. 8(a) creates a fairly low bar for notice pleading." *Rustand v. Verizon Bus. Network Servs.*, 8:21-cv-1518-WFJ-AAS, at *1 (M.D. Fla. Aug. 25, 2021) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (stating that a well-pleaded complaint may proceed even when proof of presented facts seems improbable and recovery appears unlikely)). A plaintiff's complaint will survive a motion to dismiss when it contains plausible factual allegations, which must be accepted as true, that raise entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

As explained below, Rule 9 is inapplicable to Stonemark's claim for trade disparagement (*i.e.*, defamation *per se*). *See, e.g.*, *Anderson v. Smith*,

[4]

3:19-CV-222-J-20JRK, 2020 WL 10058207, at *2 (M.D. Fla. Mar. 24, 2020) (denying motion to dismiss claim that fell within defamation *per se* category and holding that "proof of special damages need not be alleged") (citing *Barry Coll. v. Hull*, 353 So. 2d 575, 578 (Fla. 3d DCA 1977).

## ARGUMENT

### *i.  Stonemark's Counterclaim Plausibly Alleges that FIF Made a False Statement.*

The Counterclaim alleges that FIF's Regional Sales Manager and Senior Vice President, David Abernathy, made a false and disparaging statement about Stonemark. Counterclaim at ¶ 13. Specifically, the Counterclaim alleges that Mr. Abernathy falsely communicated to Stonemark's clients that Stonemark does not have sufficient capital reserves to service the needs of the clients' policyholders. *Id.* The Counterclaim also alleges that the disparaging statements "are absolutely untrue" and further that "Stonemark has never been unable to finance a premium due to lack of capital, and there is no threat of such a situation at this time." *Id.* at ¶¶ 12, 14.

Rather than deny the plausibility of Stonemark's allegations (*i.e.*, that FIF's statements are false), FIF instead asks the Court to dismiss the Counterclaim because FIF's own alternative understanding of the statements at issue might plausibly be interpreted as true. But FIF's argument—that an alternative interpretation "*could* be true," Mot. At 4 (emphasis added), turns

[5]

the pleading standard on its head. It is black letter law that when "the allegations raised in Plaintiffs' Complaint are plausible," the allegations "must be accepted as true." *Rustand v. Verizon Bus. Network Servs.*, 8:21-cv-1518-WFJ-AAS, at *1 (M.D. Fla. Aug. 25, 2021). FIF's use of the word "could" concedes that Mr. Abernathy's statements also *could* (as alleged) be false. FIF's further argument that "it is equally plausible that Abernathy's statement is true" similarly ignores the pleading standard because, at this stage, a tie (if there is one) goes to the pleader. *U.S. ex Rel. Vargas v. Lackmann Food Services, Inc.*, No. 6:05-cv-712-Orl-19DAB, at *10 (M.D. Fla. May 23, 2006) ("At the motion to dismiss stage, the Court draws all reasonable inferences in favor of Plaintiff."); *cf. Anderson ex rel. Situated v. Spirit Aerosystems Holdings, Inc.*, [105 F. Supp. 3d 1246](), 1262 (D. Kan. 2015) ("If both inferences appear to be comparatively equal, then the complaint sufficiently pleads scienter. In other words, a tie goes to the plaintiff.").

### ii. *The Counterclaim Sufficiently Alleges to Whom the Statement Was Made.*

FIF's own cases show that Stonemark's counterclaim sufficiently alleges to whom Abernathy made disparaging statements. Stonemark welcomes the opportunity to address FIF's primary purported support for its argument that Stonemark failed to allege a recipient of the false statement. Specifically, FIF claims that *L'Atelier Paris Haute Design LLC v. Officine Gullo, Inc.*, 1:21-cv-

[6]

22889-GAYLES/TORRES (S.D. Fla. June 20, 2022), dismissed a trade disparagement claim "*because* the plaintiff only generally alleged that the false statement was made to a supplier, but did not allege which supplier." Mot. At 5 (synopsizing *L'Atelier Paris*) (emphasis added).

But even a cursory review of *L'Atelier Paris* makes clear that the court dismissed the trade disparagement claim for a different reason—a reason that actually weighs towards denying FIF's Motion. *L'Atelier Paris* dismissed the trade disparagement claim because *it was brought against the wrong defendant*.

While the court *noted* that the complaint did not specifically identify the recipient of the disparaging information, it was the fact that "Plaintiff's own allegations [make clear] that [the disparaging statement]" was not sent by "the Instant Defendant." *Id.* at 6. "*Thus*," the court explained, "*as to the Instant Defendant*, Plaintiff fail[ed] to state a claim" for trade disparagement. *Id.* (emphasis added). Here, by contrast, FIF does not (and cannot) dispute that the Counterclaim specifically identifies the wrongdoers. Paragraph 13 alleges that "at least one FIF employee—David Abernathy—has, in the course of his employment by FIF, told mutual clients of Smith's and FIF's, via e-mail and verbally, that Stonemark does not have sufficient capital reserves to serve the needs of the client's policyholders." Counterclaim at ¶ 13.

FIF's reliance on *Gould v. Sacred Heart Hosp. of Pensacola*, PCA 86-

4392-RV, 1988 WL 1017208, at *17 (N.D. Fla. June 29, 1988), is similarly misplaced. FIF claims that *Gould* dismissed allegations of disparaging statements because the plaintiff alleged only that the statements were made to "doctors and others." (Mot. At 5 (citing *Gould*, 1988 WL 1017208, at *17).) What Plaintiff omits is the very next two sentences from *Gould*, which conclude: "*In particular*, the word 'others' does not eliminate *anyone* from being a possible recipient." *Gould*, 1988 WL 1017208, at *17 (emphasis added).

Thus, the issue in *Gould* was that the defendant could not possibly have been on notice as to who it purportedly disseminated falsehoods to because the complaint left open the possibility that *anyone* in the world was a recipient. By contrast, Stonemark's counterclaim narrows the class of recipients down to only that finite subset of FIF's and Mr. Smith's "mutual clients." These recipients—mutual clients—are more narrowly defined than the "doctors" who allegedly received falsehoods in *Gould* (and, again, it was the word "others," not "doctors," that warranted dismissal in *Gould*).

Next, *Gould* contrasted the allegations before that court from the allegations at issue in *Caster v. Hennessey*, 781 F.2d 1569 (11th Cir. 1986). In *Caster*, the Eleventh Circuit reversed the lower court for applying a pleading standard beyond the requirements of Rule 8(a). Specifically, as to the identity of the recipients, the complaint "satisfied this liberal pleading standard" because it "generally described [the statement's] publication, stating it was

[8]

communicated to personnel within the defendant hospital and prospective employers." *Id.* at 1570. The Eleventh Circuit concluded, before reversing the lower court for doing exactly what FIF requests here, that this "general[] descri[ption]" "was sufficient to give the defendants fair notice of his claim . . . ." *Id.*

Stonemark satisfied Rule 8 by alleging that FIF communicated falsehoods to "mutual clients." Counterclaim, ECF No. 43 at ¶ 13.[2]

### iii. *The Counterclaim Sufficiently Pleads Damages at this Stage of the Proceedings.*

#### a. Special Damages Need Not Be Pled in this Defamation Per Se Action.

FIF's Motion relies upon *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330 (M.D. Fla. 2006), to support its argument that "[t]he Counterclaim is

---

[2] FIF has been the beneficiary of this "liberal pleading standard," which applies equally to Stonemark. FIF's complaint in this case survived dismissal even though it alleged misappropriation as to information concerning the "same customers" without naming or in any other way identifying who those customers are. Compl., ECF No. 1 at ¶ 2.

FIF's complaint repeatedly relies on variations of the phrase "same customers"— unadorned by names, details, or other more specifically identifying information. *See, e.g.*, Compl., ECF No. 1 at ¶ 2 (alleging that Defendant Jerry Smith breached his fiduciary duties because he "interface[es] with the same customers that he had relationships with at [FIF]"); *id.* at ¶¶ 4, 78 (referring to the "same customers"); *id.* at ¶ 43 (alleging "on information and belief" that Mr. Smith is "targeting the same customers that he worked with while employed at [FIF]"); *id.* at ¶ 50 (alleging that FIF has a list of trade secrets that Mr. Smith downloaded containing information "related to [FIF] customers"); *id.* at ¶ 57 (same).

FIF does not, and cannot seriously, put the parties' respective pleadings side-by-side and argue that Rule 8 is satisfied by the words "same customers" in FIF's Complaint, but the same rule is violated when Stonemark uses the words "mutual clients." Just as this Court held that FIF's "complaint surmounts the Rule 8 bar of pleading and states a claim sufficient to call forth a defense," Stonemark respectfully submits that the Court should reach the same conclusion here. *See* Endorsed Order Denying Motion to Dismiss, ECF No. 15.

deficient under federal pleading standards" because it, *inter alia*, "fails to specifically plead special damages . . ." Mot., ECF No. 52 at 1, 3 (citing *Border Collie Rescue, Inc.*, 418 F. Supp. 2d 1330, 1348).

But FIF's case, *Border Collie Rescue*, reaches *the exact opposite conclusion* from the one FIF wants to draw. FIF completely ignores *Border Collie*'s opposite conclusion and thorough treatment of the elements of a trade disparagement case such as this one. Specifically, *Border Collie* explained that:

> There are two types of defamation claims under Florida law: defamation per se and defamation per quod. . . . *In defamation per se actions*, *the defamatory statement* (written or oral) *is actionable on its face. Id.* In defamation per quod actions, additional explanation of the words are necessary to show they have a defamatory meaning, or that the person actually defamed is the one who asserts the cause of action. *Id.* After analyzing the alleged defamatory statements in this case, **the defamation action appears to be a per se action**, rather than per quod, **and does not require proof of special damages**.

*Id.* at n.24 (emphasis added). Having established that a defamation action can be *per se* or *per quod*, and that the former "does not require proof of special damages," *id.*, *or even an allegation of special damages*,³ Stonemark now establishes that its Counterclaim sounds in defamation *per se*.

---

³ *See, e.g.*, *Anderson v. Smith*, 3:19-CV-222-J-20JRK, 2020 WL 10058207, at *2 (M.D. Fla. Mar. 24, 2020) (denying motion to dismiss claim that fell within defamation *per se* category and holding that "proof of special damages need not be alleged") (citing *Barry Coll. v. Hull*, 353 So. 2d 575, 578 (Fla. 3d DCA 1977). *See also Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495, 498 (Fla. 1953) (holding that actions for defamation *per se* proceed "without the necessity of showing special damage"); *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1342 (M.D. Fla. 2003) (same).

A false statement is defamatory *per se* when, considered alone without innuendo, "(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; *or (4) it tends to injure one in his trade or profession.*" Leavitt v. Cole, 291 F. Supp. 2d 1338, 1342 (M.D. Fla. 2003) (emphasis added) (citation omitted).

FIF's falsehoods did, and were expressly alleged in the Counterclaim to, "damage Stonemark's reputation and to destroy the confidence these clients have in Stonemark's ability to service the needs of the policyholders" (Counterclaim at ¶ 15)—indubitably placing the Counterclaim within the fourth category of defamation *per se*. Stonemark also alleged that FIF's defamatory statements "harmed Stonemark's reputation in the insurance premium financing market . . . ." *Id.* at ¶ 16. Thus, Stonemark's "claim [is] for *per se* slander [and] can stand without pleading or proof of actual (economic) damage." *Leavitt*, 291 F. Supp. 2d 1338, 1342 (citation omitted).

### b. *Even if Special Damages Had to Be Pled, the Counterclaim Satisfied the Pleading Standard.*

While the Court need look no further than the authorities establishing that a party claiming defamation *per se* need not even "plead[] or pro[ve] actual (economic) damages," *id.*, Stonemark nonetheless will address FIF's erroneous argument that the Counterclaim had and failed to plead a heightened standard

[11]

of "special damages" (Mot. At 5).

FIF's argument that Rule 9(g) requires Stonemark to plead the difference in sales pre- vs. post-defamation is based on an 19th Century case from the United Kingdom that entered into nearly century-old United States jurisprudence, which, importantly, *"predated the adoption of the Federal Rules of Civil Procedure." Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1343 (M.D. Fla. 2003) (emphasis added) (vacating the court's prior order erroneously requiring pleading of special damages).

The host of authorities that have rejected FIF's interpretation of Rule 9(g)—including courts in this District in particular—have long-applied Rule 9(g) in harmony with Rule 26 and supplemented by the discovery permitted under the Federal Rules of Civil Procedure. This interpretation is "[i]n acknowledgment of th[e] reality" that Rule 26 has "nullified the purposes somewhat of Rule 9(g)." *Mancil's Tractor Serv., Inc. v. T&iK Constr., LLC*, 15-80520-CIV, 2016 WL 7486707, at *2 (S.D. Fla. Mar. 3, 2016) (citing *Leavitt v. Cole*, 291 F.Supp.2d 1338, 1341 (M.D. Fla., Nov. 17, 2013)).

Interpreting the notice purpose of Rule 9(g) to encompass discovery also furthers the "strong federal policy favoring resolution of a case on its merits . . . ." *Id.* Thus, courts throughout the country "have taken into consideration a party's initial disclosures *and subsequently produced discovery* in determining whether any actual prejudice has resulted from a lack of specificity in the

[12]

complaint." *Id.* (emphasis added) (collecting cases); *see also Kafie v. Nw. Mut. Life Ins. Co.*, 834 F. Supp. 2d 1354, 1367 (S.D. Fla. 2011) (holding that where Rule 9(g) does apply, it is satisfied where the responding party is "given sufficient notice of these [special] damages in the normal course of discovery"). Courts have also affirmed post-trial verdicts as compliant with Rule 9(g) where the special damages are disclosed shortly before trial. *See Bowles v. Osmose Utilities Services, Inc.*, 443 F.3d 671, 675 (8th Cir. 2006) (purpose of Rule 9(g) fully satisfied when special damages claim was explicitly disclosed in pretrial disclosure materials three weeks prior to trial). In this case, trial is set to take place over one year from now. Scheduling Order, ECF No. 51 at 2 (setting trial for January 2, 2024).

FIF's citations to *KLS Martin, Inc. v. Med. Modeling, Inc.*, 2018 WL 8139133 (M.D. Fla. Dec. 17, 2018) and *National Numismatic Certification, LLC*, No. 2008 WL 2704404 (M.D. Fla. 2008), do not change the outcome. First, *KLS Martin* did not at all address the claims of reputational harm and client confidence (*i.e.*, business goodwill) that exist in the Counterclaim. The plaintiff in that case stood only on a diminution of business theory involving potentially all of its "unnamed 'customers,'" without actually pleading that each and every customer reduced its business with the plaintiff. *See id.* at *9. *KLS Martin* also did not address the wealth of authorities presented in Part iii.a., *supra*, holding that a case such as this one does not require pleading of special damages.

[13]

Similarly, the plaintiff's briefing did not present *any* of these authorities to that court. *See KLS Martin, Inc. v. Med. Modeling, Inc.*, 3:18-cv-00233 (M.D. Fla. Apr. 6 2018) (Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss) at 17-18.

FIF's reliance on *National Numismatic Certification, LLC*, does not alter the analysis. Cases in this District relying upon that case have not interpreted it with nearly the same pleading stringency that FIF asks this Court to apply. For example, in *Diamond Resorts Int'l, Inc. v. Aaronson*, 617CV1394ORL37DCI, 2018 WL 735627, at *8 (M.D. Fla. Jan. 26, 2018), the court, citing *National Numismatic Certification*, held that the defendants in a trade libel case were adequately put on notice for purposes of Rule 9 because the complaint alleged that plaintiffs "suffered great loss of custom [sic], and [have] been deprived of great gains and profits, which otherwise [they] would have made . . . ." *Id.* at *8. Such an allegation, which survived dismissal, is no more specific than Stonemark's allegations of harm in this case. *See* Counterclaim at ¶ ¶ 15-16.

In sum, *no* economic damages need be pled in a defamation *per se* action; *a fortiori*, special damages do not need to be pled. Further, even if Rule 9(g)—a federal rule of procedure—could upend Florida substantive law in this common law count and require special damages in a *per se* defamation case (it cannot), courts apply Rule 9(g) in harmony with the facts as developed throughout discovery. Rule 9(g) is not an end to itself—rather, its purpose is to

avoid unfair surprise at trial over one year from now.

## CONCLUSION

For the foregoing reasons, the Court should deny FIF's Motion to Dismiss the Counterclaim and award Stonemark any other appropriate relief.

Dated: November 25, 2022          Respectfully submitted,

BURSTYN LAW PLLC

By: /s/ Sean A. Burstyn
Sean A. Burstyn
Florida Bar No. 1028778
sean.burstyn@burstynlaw.com
1101 Brickell Avenue
Suite S-700
Miami, Florida 33131
Tel: (305) 204-9808

Counsel for Defendant
Stonemark, Inc.

## CERTIFICATE OF SERVICE

I CERTIFY that on November 25, 2022, a copy of the foregoing was electronically filed with the Court's CM/ECF System, which will send a notice of electronic filing and copy to all parties of record.

By: /s/ Sean A. Burstyn
Sean A. Burstyn