UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FIRST INSURANCE FUNDING,
a Division of Lake Forest Bank &
Trust Company, N.A.,

    Plaintiff,

v.   Case No: 8:22-cv-1975-WFJ-AAS

STONEMARK, INC. and
JERRY SMITH,

    Defendants.
_____/

## ORDER

This matter comes before the Court on Plaintiff/Counter-Defendant First Insurance Funding's ("First Insurance") Motion to Dismiss Defendant/Counter-Plaintiff Stonemark, Inc.'s[1] counterclaim. Dkt. 52. Stonemark responded in opposition. Dkt. 59. Upon careful consideration, the Court grants First Insurance's motion.

## BACKGROUND

Plaintiff First Insurance is an industry-leading provider of insurance

---

[1] Defendant/Counter-Plaintiff Stonemark, Inc. clarifies that it is registered under the name "Royal Premium Budget, Inc." *See* Dkt. 43 at 14 n.2. Because Royal Premium Budget, Inc. does business as "Stonemark, Inc.," *see id.*, the Court will refer to Defendant/Counter-Plaintiff by that name.

premium financing services. Dkt. 1 ¶ 16. First Insurance and Defendant Stonemark are direct competitors in the premium financing industry, with both companies offering financing services to insurance brokers and agents. *Id.* ¶¶ 18, 41. Defendant Jerry Smith worked as First Insurance's Executive Vice President of Sales prior to resigning in May 2022 to work in a similar capacity for Stonemark. *Id.* ¶¶ 35, 39, 43. First Insurance alleges that Smith disclosed First Insurance's trade secrets to his new employer, who knowingly accepted and used the same. *Id.* ¶¶ 64–69. As a result, First Insurance filed the present lawsuit against Smith and Stonemark in August 2022, alleging that both Defendants violated federal and state trade secret laws and that Smith breached his fiduciary duties. *Id.* ¶¶ 71–94.

In addition to denying liability, Stonemark brings a single counterclaim against First Insurance for "trade disparagement." Dkt. 43 at 16–17. According to Stonemark, "at least one [First Insurance] employee—David Abernathy—has, in the course of his employment by [First Insurance], told mutual clients of Smith's and [First Insurance]'s, via e-mail and verbally, that Stonemark does not have sufficient capital reserves to service the needs of the clients' policyholders." *Id.* at 16. Stonemark alleges that these are false statements that were made to damage Stonemark's reputation and destroy its clients' confidence in Stonemark's ability to service the needs of its policyholders. *Id.* at 16–17. First Insurance now moves

to dismiss this counterclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. 52.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* A plaintiff's complaint must also "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, a complaint's well-pled factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## ANALYSIS

Stonemark's counterclaim for trade disparagement appears to be a claim for what has "variously been called slander of title, disparagement of property, slandered goods, trade libel and injurious falsehood." *Collier Cnty. Pub. Co. v. Chapman*, 318 So. 2d 492, 494 (Fla. 2d DCA 1975). The essence of this type of business tort concerns the "intentional interference with another's economic relations." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999).

3

To state a claim for trade libel, a plaintiff "must allege: (1) a falsehood; (2) has been published, or communicated to a third party; (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006) (citing *Stewart Title Guar. Co. v. Title Dynamics, Inc.*, No. 2:04-CV-316-FTM-33SPC, 2005 WL 2548419, at *2 (M.D. Fla. Oct. 11, 2005). In moving to dismiss, First Insurance contends that Stonemark has failed to plausibly allege the making of a false statement, the identities of the third parties to whom such statements were made, and special damages. Dkt. 52 at 1–2.

Concerning the first two elements disputed by First Insurance, the Court finds that Stonemark has sufficiently alleged the making of a false statement to a third party. Stonemark has alleged that "at least one [First Insurance] employee—David Abernathy—has, in the course of his employment by [First Insurance], told mutual clients of Smith's and [First Insurance]'s, via e-mail and verbally, that Stonemark does not have sufficient capital reserves to service the needs of the clients' policyholders." Dkt. 43 at 16. Stonemark alleges that these statements are, in fact, false and were made to "destroy the confidence [] clients have in

4

Stonemark's ability to service the needs of the policyholders." Dkt. 43 at 16−17. Though First Insurance contends that such statements about Stonemark's capital reserves may not actually be false, Dkt. 52 at 4, the Court must take Stonemark's plausible allegations as true at this stage, *see Pielage*, 516 F.3d at 1284. Additionally, while Stonemark does not specifically name the third-party recipients of the false statements, Stonemark has expressly alleged that these individuals were "mutual clients" of both Smith and First Insurance. Dkt. 43 at 16. Though light on factual allegations, Stonemark's counterclaim places First Insurance on sufficient notice of both the nature of the claimed false statements and the general identities of the third parties to whom the statements were made.

Whether Stonemark has sufficiently pled special damages presents a slightly tougher question. In its counterclaim, Stonemark alleges that it has experienced "significant financial harm" and reputational damage as a result of the alleged false statements. Dkt. 43 at 17. First Insurance asserts that these generalized harms do not constitute special damages. Dkt. 52 at 7−8. Stonemark nevertheless contends that it need not plead special damages because the alleged false statements constitute "defamation *per se*." See Dkt. 59 at 9−11.

The problem with Stonemark's position is that it conflates the torts of

defamation and trade libel.[2] While trade libel and defamation are closely related, they are not the same causes of action. *See Border Collie Rescue*, 418 F. Supp. 2d at 1351 n.21 ("These causes of action are separate and distinct under Florida law."). Stonemark's reliance on defamation *per se* case law is therefore misplaced. Under Florida law, an element of trade libel is special damages, so Stonemark must plead it.

Stonemark alternatively contends that it *has* sufficiently pled special damages because it must only satisfy Rule 8(a)'s notice pleading requirements. Dkt. 59 at 11–15. First Insurance, on the other hand, maintains that special damages must be pled with particularity under Rule 9(g), which states that "[i]f an item of special damage is claimed, it must be specifically stated." Dkt. 52 at 6; Fed. R. Civ. P. 9(g).

Both parties' positions find support in the case law. Some courts in this District have followed *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1344–45 (M.D. Fla. 2003), in which the court determined that "special damages" refers to the "cause of action for actual loss" as opposed to the "remedy of damages," thereby rendering

---

[2] For example, Stonemark points to *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330 (M.D. Fla. 2006) in support of its argument that a plaintiff need not plead special damages in an action for trade disparagement (i.e., trade libel) involving false statements sounding in defamation *per se*. *See* Dkt. 59 at 10. However, in *Border Collie Rescue*, the court explained that the plaintiff initially pled claims of both trade libel and defamation but later abandoned the trade libel claim. 418 F. Supp. 2d at 1351 n.21. The *Border Collie Rescue* court's discussion of defamation *per se* therefore only concerned the plaintiff's remaining defamation claim, not the abandoned trade libel claim. *See id.* at 1351 n.21, 1352.

Rule 9(g) inapplicable. *See, e.g.*, *Arthrex, Inc. v. W. Coast Med. Res., LLC*, No. 8:15-cv-910-EAK-MAP, 2015 WL 12844946, at *8 (M.D. Fla. Nov. 25, 2015). Yet other courts in this District have explicitly declined to follow *Leavitt* and, instead, found that special damages must be specifically pled due to the plain language of Rule 9(g) that encompasses the special damages element of a trade libel claim. *See, e.g.*, *Nat'l Numismatic Certification, LLC. v. eBay, Inc.*, No. 6:08-cv-42-Orl-19GJK, 2008 WL 2704404, at *19−20 (M.D. Fla. July 8, 2008).

  The Court agrees with the reasoning of the latter line of cases. Stating a claim for trade libel under Florida law requires a plaintiff to plead "special damages proximately caused by the making of false statements." *Border Collie Rescue*, 418 F. Supp. 2d at 1348. And pursuant to Rule 9(g), a party must "specifically state[]" special damages. In merely alleging that it has experienced "significant financial harms" and reputational damage, Stonemark has not specifically stated what special damages were proximately caused by the making of false statements. Accordingly, Stonemark's counterclaim for trade disparagement must be dismissed.

## **CONCLUSION**

Based on the foregoing, First Insurance's Motion to Dismiss, Dkt. 52, is **GRANTED**. Stonemark's counterclaim at Dkt. 43 is **DISMISSED WITHOUT PREJUDICE**. If Stonemark so chooses, it may amend its counterclaim within fourteen (14) days.

**DONE AND ORDERED** at Tampa, Florida, on December 9, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record